kaw

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **PATRICIA A. ERNISSE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 07-2579-JAR** |
| | ) | |
| **L.L. & G., INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Plaintiff Patricia A. Ernisse brings this action against defendants L.L. & G., Inc. claiming

that she was discharged in violation of the Americans with Disabilities Act ("ADA"),[1] the

Family Medical Leave Act ("FMLA"),[2] and the Employee Retirement Income Security Act

("ERISA").[3] She also claims that defendant breached its fiduciary duty and failed to give notice

in violation of ERISA and the Consolidated Omnibus Budget Reconciliation Act ("COBRA").

Before the Court is defendant's Motion for Summary Judgment[4] (Doc. 11).  For the reasons

below, defendant's motion is granted in part and denied in part.

## I.      Background

On April 1, 2005, plaintiff began her employment with L.L. & G., Inc. as a director of

---

[1] 42 U.S.C § 12101 et. seq.

[2] 29 U.S.C. §§ 2601 et. seq.

[3] 29 U.S.C §§ 1001-1461.

[4] Though defendant's motion is titled as one for summary judgment, defendant only moves for summary judgment on the issue of exhaustion under the ADA.  Because defendant makes arguments under Fed. R. Civ. P. 12(b)(6), the Court will accordingly consider the remaining counts on a motion to dismiss.

marketing.  During her employment, she was supervised by Gale Premer, a co-owner of the company.  As an employee, plaintiff was covered by a short-term disability plan that permitted thirty days of short-term disability leave after twelve months of employment.  Prior to her employment, plaintiff was diagnosed with rheumatoid arthritis in her knees, a condition that impairs her ability to walk and stand.  Because of the problems with her knees, plaintiff had knee replacement surgery on her left knee in July 2002.

In February 2006, plaintiff's doctor informed her that she would have to undergo knee replacement surgery on her right knee in the future, but that she could delay the surgery by taking Hyalgan injections.  Plaintiff informed defendant that she was taking these knee injections instead of having knee replacement surgery.  During conversations with coworkers, plaintiff learned that Gale Premer's sister-in-law had knee replacement surgery.  Plaintiff talked with Gale Premer about the knee surgery and requested information about the surgeon who did his sister-in-law's surgery.  Gale Premer told plaintiff to talk to his brother Larry Premer, a co-owner, about the knee surgery.  Larry Premer did not respond to any of plaintiff's inquiries.

In June 2006, plaintiff attended a convention with Gale Premer, during which plaintiff's knee became inflamed, causing her to walk with a noticeable limp and miss most of the convention activities.  Becoming more concerned that she would need knee replacement surgery soon, plaintiff began to correspond with Jennifer Lang, an employee of defendant in charge of disseminating information about the defendant's insurance plans.  Plaintiff requested information about the long-term disability plan, but was informed that there was no information about the long-term disability plan in her file.

Again, in July 2006, plaintiff's knee became irritated to the point that she walked with a

noticeable limp.  While at work, plaintiff encountered Gale Premer while trying to walk up the

stairs in the office.  Premer asked plaintiff whether she was having trouble with her knee and if

she had previously undergone knee replacement surgery, to which plaintiff stated yes.  After that

conversation, Premer began to treat plaintiff differently by being disrespectful, curt, shouting at

defendant, and leaving meetings once plaintiff began to present her marketing agenda.  The

defendant eventually published a newspaper advertisement seeking a marketing manager in late

July 2006.  On September 13, 2006, plaintiff was told that it was her last day.

On March 13, 2007, plaintiff called the Equal Employment Opportunity Commission

("EEOC") in order to file a discrimination claim.  The EEOC sent her an intake questionnaire,

which she completed and returned on May 3, 2007.  Approximately a week later, plaintiff

received from the EEOC a letter dated May 9, 2007, which stated an investigator with the EEOC

had been assigned to the case and would need to conduct an interview.  The letter provided

contact information so that plaintiff could schedule an interview.  It also explained that plaintiff

had 180 days from the date of termination to file a state claim, 300 days to file a claim under

federal law, and that the matter had not yet been filed as a charge.  The letter indicated that

plaintiff should contact the EEOC within ten days of receipt or the action would be terminated

and after ninety days, the file would be destroyed.

On May 22, 2007, plaintiff spoke with Maxine Nelson with the EEOC.  Plaintiff told

Nelson that she wanted to file a claim of discrimination.  On July 6, 2007, plaintiff called Nelson

and left a recorded message, but received no response.  On August 27, 2007, plaintiff received a

letter from Nelson titled "Charge of Discrimination."  Plaintiff signed the document on August

28, 2007, and mailed it to the EEOC.  On September 13, 2007, the EEOC informed plaintiff that

it was closing the file on her charge because it was not timely filed.

## II.     Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[5]  A fact is only material under this standard if a dispute over it would affect the outcome of the suit.[6]  An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[7]  The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[8]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[9]  "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[10]  The burden may be met by showing that there is no evidence to support the nonmoving party's case.[11]  If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of

---

[5]Fed. R. Civ. P. 56(c).

[6]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[7]*Id.*

[8]*Id.* at 251–52.

[9]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[10]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

[11]*Id.*

trial from which a rational trier of fact could find for the nonmovant."[12]  When examining the underlying facts of the case, the Court is cognizant that it may not make credibility determinations or weigh the evidence.[13]  Furthermore, the record is to be viewed in the light most favorable to the nonmoving party.[14]

### A.    Failure to Exhaust Administrative Remedies

Defendant moves for summary judgment on plaintiff's ADA claim, contending that plaintiff failed to file her charge with the EEOC within 300 days of her termination.  Under Title VII a plaintiff must file a charge of discrimination with the EEOC within 300 days of the last allegedly unlawful act.[15]  "Title I of the ADA requires a plaintiff to exhaust her administrative remedies before filing suit."[16]  In the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to filing suit.[17]  In this case, plaintiff was terminated on September 13, 2006, and filed her charge on August 28, 2007, over 300 days later.

Plaintiff asserts that a material issue of fact remains as to whether she filed a "charge" with the EEOC.  Plaintiff relies on *Federal Express Corp. v. Holowecki*,[18] *Montes v. Vail Clinic*,

---

[12]*Id.*

[13]*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[14]*Harrison v. Wahatoyas, LLC*, 253 F.3d 552, 557 (10th Cir. 2001).

[15]*Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1163 (10th Cir. 2007).

[16]*Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007).

[17]*Id.*

[18]__ U.S. __, 128 S. Ct. 1147 (2008).

*Inc.*,[19] and *Jones v. United Parcel Service, Inc.*[20]

In *Montes*, the Tenth Circuit first noted that a charge to the EEOC must be filed within 300 days of the last allegedly unlawful act.[21]  It then acknowledged the circuit split on the issue of what constitutes a "charge" under Title VII, but did not add to the discussion because plaintiffs had failed to provide any record of the "intake forms" from the Colorado Civil Rights Division ("CCRD").[22]  The court noted that without the records from the CCRD, it would be "marching into an intercircuit split unable to contribute thoughtfully to the discussion . . . ."[23]  Subsequently, in *Jones*, the Tenth Circuit found that an intake questionnaire met the prerequisites for a charge under the ADA because "Jones manifested his intent to activate the administrative process by filing a statement satisfying the EEOC's minimum requirements, and the EEOC ultimately treated the statement as a charge."[24]  Finally, in *Holowecki*, the Supreme Court concluded that where a plaintiff files an intake questionnaire and from the standpoint of an objective observer, it can reasonably be determined that the plaintiff intended for the agency to activate its machinery and remedial processes, then the intake questionnaire could be considered a charge.[25]

In this case, there is an issue of material fact as to whether plaintiff manifested an intent

---

[19]497 F.3d 1160 (10th Cir. 2007).

[20]502 F.3d 1176 (10th Cir. 2007).

[21]*Montes*, 497 F.3d at 1163.

[22]*Id.* at 1166.

[23]*Id.* at 1165.

[24]*Jones*, 502 F.3d at 1185.

[25]*Fed. Express Corp. v. Holowecki*, __ U.S. __, 128 S. Ct. 1147, 1158 (2008).

to activate the agency administrative process, precluding summary judgment.  Plaintiff's intake

questionnaire sets out the claims adequately, as a lay person would.  In her intake questionnaire,

plaintiff alleges that she had arthritis in her knees, and that defendant knew she had this medical

issue when she was hired.  When asked "[w]hat is the reason (basis) for your claim of

employment discrimination?" plaintiff checked the box marked "[d]isability."  In fact, plaintiff's

affidavit details that she made phone calls to the EEOC investigator, leaving a message, and told

the investigator that she wanted to file a charge during her interview, and provided an affidavit to

such evidence.  Based on this, a material issue of fact remains.

## II.   Motion to Dismiss Standard

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court assumes the

truth of all well pleaded facts and views all reasonable inferences from those facts in favor of the

plaintiff.[26]  A claim will be dismissed for failure to state a claim only when the factual

allegations fail to state a claim that is plausible on its face.[27]  Thus, a "mere metaphysical

possibility that some plaintiff could prove some set of facts in support of the pleaded claims is

insufficient;"[28] the factual allegations in the Complaint must raise a right to relief above the

speculative level.[29]  Though "Rule 12(b)(6) does not require detailed factual allegations, . . . the

complaint must set forth the grounds of plaintiff's entitlement to relief through more than labels,

---

[26]*Lindsey v. Bowling*, —F. Supp. 2d—, 2008 WL 2331175, at *1 (D. Kan. June 6, 2008).

[27]*Culp v. Sifers*, 550 F. Supp. 2d 1276, 1281 (D. Kan. 2008) (quoting *Bell Atl. Corp. v. Twombly*, —U.S.—, 127 S. Ct. 1955, 1974 (2007)).

[28]*Rider v. Werholtz*, 548 F. Supp. 2d 1188, 1194 (D. Kan. 2008) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

[29]*Culp*, 550 F. Supp. 2d at 1281(quoting *Twombly*, 127 S. Ct. at 1965).

7

conclusions and a formulaic recitation of the elements of a cause of action."[30]  When determining whether a claim should be dismissed, the Court is mindful that the question is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support those claims.[31]

### A.    Interference with FMLA Leave

Defendant argues that plaintiff has failed to state a claim for interference of her FMLA leave rights because at the time she was terminated she did not exercise or attempt to exercise her rights under FMLA.  Plaintiff alleges that she was denied her substantive rights under the FMLA for reasons connected to her FMLA leave, namely that she was fired to prevent her from taking FMLA leave.  Additionally, plaintiff asserts that defendant was aware that she would have knee replacement surgery in late 2006.

Pursuant to the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following: "... a serious health condition that makes the employee unable to perform the functions of the position of such employee."[32]  "The FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the Act."[33] Under this theory, plaintiff has the burden to show entitlement to FMLA leave, but need not show the employer's intent to interfere with FMLA leave.[34]  Under the interference theory, if an employer interferes

---

[30]*Lindsey*, 2008 WL 2331175, at *1 (quoting *Twombly*, 127 S. Ct. at 1964).

[31]*Culp*, 550 F. Supp. 2d at 1281 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).

[32]29 U.S.C. § 2612(a)(1)(D).

[33]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 (10th Cir. 2004).

[34]*See* 29 U.S.C. § 2612(a)(1)(D).

with an employee's FMLA-created right to medical leave, it has violated the FMLA, regardless of its intent.[35]   In such a case, the employee must demonstrate her entitlement to the disputed leave.[36]   The intent of the employer is immaterial.[37]

Thus, a *prima facie* case under an interference/entitlement theory requires a showing of (1) FMLA leave entitlement, (2) an adverse action by defendant, which interfered with plaintiff's right to take FMLA leave, and (3) causal connection between the plaintiff's exercise or attempt to exercise FMLA leave.[38]   "In order to satisfy the second element of an interference claim, the employee must show that she was prevented from taking the full 12 weeks of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave."[39]   Nonetheless, even when an employee requests and can demonstrate an entitlement to FMLA leave, she has no greater rights than the employee who continues to report to work.[40]   Thus, an employee may be terminated, even where the termination interferes with her ability to take FMLA leave, so long as she would have been terminated regardless of her leave request.[41]

Here, plaintiff's allegations fail to state a claim for interference.  Plaintiff alleges that she planned to take FMLA leave, that defendant was aware that she planned to take FMLA leave,

---

[35]*Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002).

[36]*Id.*

[37]*Id.*

[38]*Bass v. Potter*, 522 F.3d 1098, 1102 n.5 (10th Cir. 2008) (citations omitted).

[39]*Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007) (citing *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1181 (10th Cir.2006)).

[40]*See Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998).

[41]*See id.*

and that defendant interfered with her rights under FMLA by terminating her on September 13, 2006.  Even taking all the facts alleged by plaintiff as true, she still fails to state a necessary element of the *prima facie* case, that is, she exercised or attempted to exercise her rights under FMLA.  It would be speculative for this Court to assume that plaintiff *would* have exercised or attempt to exercise her right under FMLA.  Plaintiff's stance would essentially provide a cause of action under the FMLA to any employee that was terminated before requesting leave if an employee could, after being terminated, claim that he would have requested leave for an upcoming event.  Accordingly, defendant's motion is granted on this claim.

### B.    Termination in Violation of ERISA

Section 510 of ERISA[42] was enacted to protect plan participants from wrongful termination to deprive them of the right to obtain employee benefits.[43]  It provides that "It shall be unlawful for any person to discharge . . . a participant . . . exercising any right to which he is entitled under the provisions of an employee benefit plan, . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan."[44] It is clear that "even though an employee may lack a present legal right to receive benefits in the future, an anticipated right to receive benefits may not be denied in a manner that would contravene § 510."[45]  Thus, plaintiff must allege that she is a participant of an employee benefit plan and that her employer discharged her specifically to interfere with her future right under

---

[42]29 U.S.C. § 1140.

[43]*Huske v. Honeywell*, 298 F. Supp. 2d 1222, 1226 (D. Kan. 2004).

[44]29 U.S.C. § 1140.

[45]*Garratt v. Walker*, 164 F.3d 1249, 1252 (10th Cir. 1998) (*en banc*) (citing *Inter-Modal Rail Employees Ass'n v. Atchinson, Topeka & Sante Fe Ry.,* 520 U.S. 510, 515 (1997)).

that plan.

Plaintiff's Complaint details that she is a participant under the plan at issue, that she planned to have replacement surgery in late 2006, that she would have become entitled to receive short-term and long-term benefits, and that defendant was aware that she intended to exercise her rights and discharged her to prevent her from doing so.  Specifically, plaintiff alleges that she was covered under the plans at issue after twelve months of employment and that she could participate in an optional long-term disability plan, which she did.  Plaintiff also alleges that she went so far as to speak with defendant's plan coordinator, Ms. Lang about the insurance plan.

Defendant argues that plaintiff's claim cannot stand because her employment ended and she was no longer eligible for the disability benefit at issue.  Defendant notes that, unlike welfare plans in which because of a health issue a participant is continually utilizing the benefits, plaintiff was not disabled at the time she was fired and as a result, was not receiving any benefits.  Although the Tenth Circuit did not explicitly address this issue, it stated that "there may be 'a point where an employee's possible attainment of a "right" is so speculative and contingent that it falls outside the bulwark of § 510.'"[46]  This Court believes that point has been reached in this case.  Plaintiff's allegations that she was going to have knee surgery in four months is too speculative.  Indeed, plaintiff does not plead that she was scheduled for surgery and that defendant knew she was to take some time off work in late 2006.  Rather, plaintiff simply states that she *would have* had knee surgery.  As such, plaintiff's claim is too speculative to stand.

There is yet another reason plaintiff's claim cannot stand.  "Congress intended § 502(a)

---

[46]*Id.* at 1253 (quoting *Garratt v. Walker*, 121 F.3d 565, 570 (10th Cir. 1997)).

to be the exclusive remedy for rights guaranteed under ERISA, including those provided by §
510."[47]  Under § 502(a)[48] "a plan participant or beneficiary may sue to recover benefits due under
the plan, to enforce the participant's rights under the plan, or to clarify rights to future
benefits."[49]  Under § 1132(a)(3), a participant may bring an action to "(A) enjoin any act or
practice . . .or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii)
to enforce any provision . . . ."[50]  Both the Supreme Court and the Tenth Circuit have
consistently concluded that ERISA's remedy provisions should not be tampered with.[51]  As such,
the Tenth Circuit concluded that backpay was not an available remedy for violations of § 510
because it was not an equitable one.[52]  Here, plaintiff seeks backpay, lost benefits, and attorney's
fees in the amount of $50,000, an amount that cannot be recovered under ERISA's remedial
provisions.  Accordingly, plaintiff's claim is dismissed.

### C.       Breach of Fiduciary Duty

Under § 1132(a), a civil action may be brought by a plan participant to obtain relief under
§ 1132(c)(1).[53]  Section 1132(c)(1) provides that any administrator who fails or refuses to
comply with a request for any information that the administrator is required to provide may be
personally liable to the participant.

---

[47]*Millsap v. McDonnell Douglas Corp.*, 368 F.3d 1246, 1250 (10th Cir. 2004).

[48]29 U.S.C. § 1132(a)(3).

[49]*Millsap*, 368 F.3d at 1250.; 29 U.S.C § 1132(a)(3).

[50]*Millsap*, 368 F.3d at 1251.

[51]*Id.* at 1250 (citing *Massachusetts Mut. Life Ins. Co. v. Russel*, 473 U.S. 134, 146 (1985)) .

[52]*Id.* at 1251.

[53]29 U.S.C. § 1132(a).

Defendant claims that plaintiff has failed to state a claim for relief because she does not elaborate on what information was incorrect and what information plaintiff requested.  In response, plaintiff argues that paragraphs 15 and 37 of her Complaint specifically state that "defendant breached its fiduciary duty to the plaintiff by failing to provide accurate information in regard to the terms and conditions of the long-term disability benefits plan, despite the plaintiff's request."

Plaintiff plainly states that in July 2006 she asked Ms. Lang for information regarding the terms and conditions of the long-term disability plan, to which she was provided no information. She alleges that defendant is a co-administrator of the plans at issue and that defendant breached its fiduciary duty by not providing information in accordance with § 1132.  Plaintiff's Complaint states that she asked Ms. Lang several times for information on the "terms and conditions" of the long-term disability policy.  Thus, plaintiff's request was merely for the policy guidelines dealing with the administration eligibility requirements for long-term disability.  Plaintiff's Complaint, however, does not state a claim for relief.

Under § 1024(b)(4), the administrator must "upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, . . . or other instruments under which the plan is established or operated."[54]  As can be clearly viewed from plaintiff's Complaint, she does not allege that she requested any information in writing as required by the statute,[55] and though the statute does not indicate what form a request

---

[54]29 U.S.C. § 1024(b)(4).

[55]*See Christensen v. Qwest Pension Plan*, 462 F.3d 913, 919 (8th Cir. 2006) (finding that an oral request does not constitute in writing for purposes of ERISA).

must take,[56] it has been decided that simply requesting "policies covering my contract" was not enough to be construed as a request for information.[57]  Thus, plaintiff cannot state a claim because she has not alleged that there was a written request with more than cursory language.

### D.      Failure to Give Notice Under ERISA and COBRA

Finally, plaintiff claims that defendant violated COBRA by failing to notify her that she could continue her coverage under the long-term disability plan in violation of § 1161(a).[58] Defendant argues that plaintiff's eligibility ended at the termination of her employment and that there is no provision in the plan for a private policy after her employment ended.  Alternatively, defendant argues that § 1161(a) notice only applies to "group health plans" and not disability plans.

"COBRA requires that employers allow former employees the opportunity to continue care coverage under the employer's" health plan.[59]  Section 1161(a) provides that the "plan sponsor of each group health plan shall provide, in accordance with this part, that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan."  This means that administrators are required to notify terminated employees that they have the right to continued health coverage under group health plans.[60]  "When a qualifying event occurs . . . the

---

[56]*Moothart v. Bell*, 21 F.3d 1499, 1503 (10th Cir. 1994).

[57]*Id.* (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1077 (5th Cir. 1990)).

[58]29 U.S.C. § 1161(a).

[59]*Smith v. Rogers Galvanizing Co.*, 128 F.3d 1380, 1383 (10th Cir. 1997).

[60]*Crotty v. Dakotacare Admin. Serv., Inc.*, 455 F.3d 828, 829 (8th Cir. 2006).

14

employer is required to notify the plan administrator within 30 days."[61]   The administrator must then notify any "qualified beneficiary."[62]   Here, plaintiff alleges that she is a qualified beneficiary that lost coverage due to being discharged and that she suffered a qualifying event. However, plaintiff does not allege that she participated in a "group health plan."   Instead, plaintiff claims that the long-term disability plan qualifies as a health plan.

Under § 1167(1), "group health plan" means a welfare benefit plan providing medical care.[63]   A group health plan does "not include any plan substantially all of the coverage under which is for qualified long-term care services."[64]   Medical care means "amounts paid . . . for diagnosis, cure, mitigation, treatment, or prevention of disease . . . ."[65]   Plaintiff argues, without any authority or support, that a disability plan under this definition is a group health plan "because disability payments 'mitigate' one of the effects of disease, i.e. the loss of employment."   Plaintiff's argument is not plausible on its face, as a disability plan is not mentioned at all in the definition of medical care.   Furthermore, a number of courts have concluded that other welfare benefit plans do not fall under the definition of group health plan.[66] This Court is of the same view.   Plaintiff's claim is dismissed.

**IT IS THEREFORE ORDERED THAT** Defendant's Motion for Summary Judgment

---

[61]*Smith*, 128 F.3d at 1383.

[62]*Id.* (citing 29 U.S.C. § 1166(a)(4)).

[63]29 U.S.C. § 1167(1).

[64]29 U.S.C. § 1167(1).

[65]26 U.S.C. § 213(d)(1)(A).

[66]*See Austell v. Raymond James Assoc., Inc.*, 120 F.3d 32, 34 (4th Cir. 1997) (concluding that disability insurance payment is not an amount paid to diagnose, cure, treat, or prevent disease); *Lauder v. First Unum Life Ins. Co.*, 55 F. Supp. 2d 269, 274 (S.D. N.Y. 1999) (finding that COBRA does not require continuation of disability coverage); *Burgess v. Unum Life Ins. Co.*, No. C-95-0229, 1995 WL 581151, at *3 n. 3 (N.D. Cal. Sept. 25, 1995) (stating that disability coverage is explicitly excluded from COBRA).

(Doc. 11) is **Granted in part and Denied in part**.  Counts II, III, IV, and V are dismissed.

**IT IS SO ORDERED.**

Dated this 29th day of September 2008.

S/ Julie A. Robinson

JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE